# UNITED STATES *v.* JOHN DOE, INC. I, ET AL.

No. 85–1613.   Argued January 12, 1987—Decided April 21, 1987

STEVENS, J., delivered the opinion of the Court, in which REHNQUIST, C. J., and POWELL, O'CONNOR, and SCALIA, JJ., joined. BRENNAN, J., filed a dissenting opinion, in which MARSHALL and BLACKMUN, JJ., joined, *post*, p. 117. WHITE, J., took no part in the consideration or decision of the case.

*Deputy Solicitor General Cohen* argued the cause for the United States. With him on the briefs were *Solicitor General Fried, Assistant Attorneys General Ginsburg* and *Willard, Deputy Assistant Attorney General Cannon, Paul J. Larkin, Jr., Robert B. Nicholson, Douglas N. Letter, Anna Swerdel,* and *Carolyn G. Mark.*

*Paul R. Grand* argued the cause for respondents. With him on the brief were *Theodore V. Wells, Jr., Walter Sterling Surrey, Carol M. Welu,* and *Howard Adler, Jr.**

JUSTICE STEVENS delivered the opinion of the Court.

In *United States* v. *Sells Engineering, Inc.,* 463 U. S. 418 (1983), we held that attorneys for the Civil Division of the Justice Department may not automatically obtain disclosure of grand jury materials for use in a civil suit, but must instead seek a court order of disclosure, available upon a showing of "particularized need." We explicitly left open the "issue concerning continued use of grand jury materials, in the civil phase of a dispute, by an attorney who himself conducted the criminal prosecution." *Id.,* at 431, n. 15. Today, we decide that open question. In addition, for the first time, we review a concrete application of the "particularized need" standard to a request for disclosure to Government attorneys.

I

In March 1982, attorneys in the Antitrust Division of the Department of Justice were authorized to conduct a grand jury investigation of three American corporations suspected of conspiring to fix the price of tallow being sold to a foreign government and financed by the Department of State's Agency for International Development. After subpoenaing thousands of documents from the three corporate respondents, and taking the testimony of numerous witnesses, including the five individual respondents, the Department of Justice conferred with some of respondents' attorneys and concluded that although respondents had violated § 1 of the Sherman Act, 15 U. S. C. § 1, criminal prosecution was not warranted under the circumstances. In early June

---

*J. Randolph Wilson, William H. Allen, David A. Donohoe, Owen M. Johnson, Jr.,* and *Paul B. Hewitt* filed a brief for Archer-Daniels-Midland Co. et al. as *amici curiae* urging affirmance.

1984, the grand jury was discharged without returning any indictments.

On June 28, 1984, the attorneys who had been in charge of the grand jury investigation served Civil Investigative Demands (CID's), pursuant to the Antitrust Civil Process Act, 76 Stat. 548, as amended, 15 U. S. C. §§ 1311–1314, on approximately two dozen persons and entities, including the corporate respondents, calling for the production of various documents. The Antitrust Division advised each respondent that it could comply with the CID by certifying that the requested documents had already been furnished to the grand jury. Two of the corporate respondents refused to do so, and also refused to furnish any additional copies of the documents.

After further investigation, the Antitrust Division attorneys came to the tentative conclusion that respondents had violated the False Claims Act, 31 U. S. C. §§ 3729–3731, and the Foreign Assistance Act, 22 U. S. C. §§ 2151–2429 (1982 ed. and Supp. III), as well as the Sherman Act. Because the Civil Division of the Department of Justice has primary responsibility for enforcing the False Claims Act, see 28 CFR § 0.45(d) (1986), the Antitrust Division deemed it appropriate to consult with lawyers in the Civil Division before initiating a civil action. Additionally, because of the venue of the contemplated civil action, the Antitrust Division felt it necessary to consult with the United States Attorney for the Southern District of New York. Accordingly, the Antitrust Division lawyers filed a motion in the District Court for the Southern District of New York requesting an order under Federal Rule of Criminal Procedure 6(e) allowing them to disclose grand jury material to six named Government attorneys and such associates as those attorneys might designate. After an *ex parte* hearing, the District Court granted the motion, based on its finding that the Government's interest in coordinating fair and efficient enforcement of the False Claims Act, and obtaining the Civil Division's and United States Attor-

ney's expert consultation, constituted a particularized need for the requested disclosure.

On March 6, 1985, the Government advised respondents that the Rule 6(e) order had previously been entered and that a civil action would be filed against them within two weeks. Respondents immediately moved to vacate the Rule 6(e) order and, additionally, to enjoin the Government from using the grand jury information in "preparing, filing, or litigating" the anticipated civil action. The District Court denied both forms of relief. Respondents immediately appealed, and also moved for immediate interim relief from the Court of Appeals for the Second Circuit. The Court of Appeals granted partial relief, allowing the Government to file a complaint, but ordering that it be filed under seal.

After expedited consideration, The Court of Appeals reversed both aspects of the District Court's order. *In re Grand Jury Investigation*, 774 F. 2d 34 (1985). First, the court examined the issue left open in *Sells*, and agreed with respondents that, because the attorneys who had worked on the grand jury investigation were now involved only in civil proceedings, the attorneys were forbidden from making continued use of grand jury information without first obtaining a court order. 774 F. 2d, at 40–43. Nonetheless, the Court of Appeals took no action with respect to the complaint that had been filed, because the court concluded that the complaint disclosed nothing about the grand jury investigation. *Id.*, at 42. With respect to the District Court's order allowing disclosure to the six attorneys for consultation purposes, the Court of Appeals held that the order was not supported by an adequate showing of "particularized need." *Id.*, at 37–40. We granted certiorari, 476 U. S. 1140 (1986), and now reverse.[1]

---

[1] The Court of Appeals rejected respondents' challenge to the *ex parte* nature of the initial Rule 6(e) hearing. 774 F. 2d, at 37. Respondents have not cross-petitioned for certiorari on that point, and we do not address it.

## II

The "General Rule of Secrecy" set forth in Federal Rule of Criminal Procedure 6(e) provides that certain persons, including attorneys for the Government, "shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules."[2]   Unlike our previous decisions in this area, which have primarily involved exceptions to the

---

[2] Rule 6(e) provides, in relevant part, as follows:
"Recording and Disclosure of Proceedings.

.        .        .        .        .

"(2) General Rule of Secrecy.   A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules.   No obligation of secrecy may be imposed on any person except in accordance with this rule. . . .

"(3) Exceptions.

"(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

"(i) an attorney for the government for use in the performance of such attorney's duty; and

"(ii) such government personnel . . . as are deemed necessary . . . to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

"(B) Any person to whom matters are disclosed under subparagraph (A)(ii) of this paragraph shall not utilize that grand jury material for any purpose other than assisting the attorney for the government in performance of such attorney's duty to enforce federal criminal law.   An attorney for the government shall promptly provide the district court, before which was impaneled the grand jury . . . with the names of the persons to whom such disclosure has been made.

"(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

"(i) when so directed by a court preliminarily to or in connection with a judicial proceeding; or

"(ii) when permitted by a court at the request of the defendant, upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury."

general rule,[3] this case involves a more preliminary question: what constitutes disclosure? The Court of Appeals acknowledged that "to characterize [attorneys'] continued access in the civil phase to the materials to which they had access in the criminal phase as disclosure within the meaning of rule 6(e) seems fictional at first glance." 774 F. 2d, at 40. But the Court of Appeals reasoned that the attorneys could not possibly remember all the details of the grand jury investigation and therefore the use of grand jury materials "to refresh their recollection as to documents or testimony to which they had access in the grand jury proceeding is tantamount to a further disclosure." *Ibid.*

Contrary to the Court of Appeals' conclusion, it seems plain to us that Rule 6(e) prohibits those with information about the workings of the grand jury from revealing such information to other persons who are not authorized to have access to it under the Rule. The Rule does not contain a prohibition against the continued use of information by attorneys who legitimately obtained access to the information through the grand jury investigation. The Court of Appeals' reasoning is unpersuasive because it stretches the plain meaning of the Rule's language much too far. It is indeed fictional—and not just "at first glance"—to interpret the word "disclose" to embrace a solitary reexamination of material in the privacy of an attorney's office.[4] For example, it is obvious that the prohibition against disclosure does not mean that an attorney

---

[3] See, *e. g.*, *United States* v. *Procter & Gamble Co.*, 356 U. S. 677 (1958); *Pittsburgh Plate Glass Co.* v. *United States*, 360 U. S. 395 (1959); *Dennis* v. *United States*, 384 U. S. 855 (1966); *Douglas Oil Co.* v. *Petrol Stops Northwest*, 441 U. S. 211 (1979); *Illinois* v. *Abbott & Associates, Inc.*, 460 U. S. 557 (1983); *United States* v. *Sells Engineering, Inc.*, 463 U. S. 418 (1983); *United States* v. *Baggott*, 463 U. S. 476 (1983).

[4] The word "disclose" is not defined in the Rule, but the common dictionary definitions include to "open up," to "expose to view," to "open up to general knowledge," and to "make known or public . . . something previously held close or secret." See Webster's Third New International Dictionary 645 (1976); Webster's New Collegiate Dictionary 325 (1977).

who prepared a legal memorandum (which happens to include some information about matters related to the workings of the grand jury) for his file, is barred from looking at the memorandum once the grand jury investigation terminates. As the Court of Appeals for the Eighth Circuit recently concluded, "[f]or there to be a disclosure, grand jury matters must be disclosed to *someone*." *United States* v. *Archer-Daniels-Midland Co.*, 785 F. 2d 206, 212 (1986), cert. pending, No. 85–1840.

Because we decide this case based on our reading of the Rule's plain language, there is no need to address the parties' arguments about the extent to which continued use threatens some of the values of grand jury privacy identified in our cases[5] and cataloged in *Sells Engineering*, 463 U. S., at 432–433. While such arguments are relevant when language is susceptible of more than one plausible interpretation, we have recognized that in some cases "[w]e do not have before us a choice between a 'liberal' approach toward [a Rule], on the one hand, and a 'technical' interpretation of the Rule, on the other hand. The choice, instead, is between recognizing or ignoring what the Rule provides in plain language. We accept the Rule as meaning what it says." *Schiavone* v. *Fortune*, 477 U. S. 21, 30 (1986). As for the policy arguments, it

---

[5] In *Procter & Gamble*, the Court listed the following reasons for grand jury secrecy:

"'(1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.'" 356 U. S., at 681, n. 6, quoting *United States* v. *Rose*, 215 F. 2d 617, 628–629 (CA3 1954).

suffices to say that, as the Court of Appeals recognized, the implications of our construction are not so absurd or contrary to Congress' aims as to call into question our construction of the plain meaning of the term "disclosure" as used in this Rule.

Respondents urge in the alternative that Rule 6(e) prohibits attorneys' continued use of grand jury materials because the filing of a civil complaint itself discloses grand jury materials to outsiders. Respondents argue that such disclosure is inevitable because a civil complaint's factual allegations will invariably be based on information obtained during the grand jury investigation. This hypothetical fear is not substantiated by the record in this case. The Court of Appeals stated that the Government's complaint "does not quote from or refer to any grand jury transcripts or documents subpoenaed by the grand jury, and does not mention any witnesses before the grand jury, or even refer to the existence of a grand jury." 774 F. 2d, at 37. Nor do respondents identify anything in the complaint that indirectly discloses grand jury information. We have no basis for questioning the accuracy of the Court of Appeals' conclusion that the filing of the complaint did not constitute a prohibited disclosure. A Government attorney may have a variety of uses for grand jury material in a planning stage, even though the material will not be used, or even alluded to, in any filing or proceeding.[6] In

---

[6] JUSTICE BRENNAN argues that "there can be little doubt that grand jury information was used" in preparing the complaint. *Post*, at 124, n. 5. Mere "use" of grand jury information in the preparation of a civil complaint would not constitute prohibited disclosure. In this case, for example, one cannot say whether the Government relied at all on the grand jury information. The Government obviously had some evidence of wrongdoing (or at least suspicion) before it convened the grand jury. The general allegations of the civil complaint may well have disclosed nothing that the Government attorneys did not already know before they convened the grand jury, even though the grand jury investigation corroborated the previously known facts. To be sure, the Government's decision to bring a civil action was "based on the evidence obtained in the course of its grand jury testi-

this vein, it is important to emphasize that the issue before us is only whether an attorney who was involved in a grand jury investigation (and is therefore presumably familiar with the "matters occurring before the grand jury") may later review that information in a manner that does not involve any further disclosure to others. Without addressing the very different matter of an attorney's disclosing grand jury information to others, inadvertently or purposefully, in the course of a civil proceeding, we hold that Rule 6(e) does not require the attorney to obtain a court order before refamiliarizing himself or herself with the details of a grand jury investigation.

## III

The Department of Justice properly recognized that under our holding in *Sells* it could not disclose information to previously uninvolved attorneys from the Civil Division or the United States Attorney's office without a court order pursuant to Rule 6(e)(3)(C)(i).[7] Upon the Department's motion, the District Court granted an order, finding a "particularized need for disclosure" pursuant to the considerations described in *Sells*. The District Court accepted the Government's argument that consultation and coordination between the Civil Division, the United States Attorney, and the Antitrust Division was necessary to ensure consistent enforcement of the False Claims Act and "the fair and evenhanded administration of justice." App. 14. The Court of Appeals reversed on this point, however, concluding that disclosure was unnec-

---

mony," *ibid.*, but this does not mean that the complaint disclosed any of that information, or that, as JUSTICE BRENNAN believes, *post*, at 128, the Government has no interest in the material unless it actually introduces it or otherwise discloses it at trial.

[7] Rule 6(e)(3)(C)(i) provides:

"(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

"(i) when so directed by a court preliminarily to or in connection with a judicial proceeding."

essary because the same information could eventually have been obtained through civil discovery.

In *Sells* we noted that Rule 6(e) itself does not prescribe the substantive standard governing the issuance of an order pursuant to Rule 6(e)(3)(C)(i) and that the case law that had developed in response to requests for disclosure by private parties had consistently required "a strong showing of particularized need" before disclosure is permitted. 463 U. S., at 443–445; see generally *Douglas Oil Co.* v. *Petrol Stops Northwest*, 441 U. S. 211, 222–223 (1979).[8] Although we held that this same standard applies where a court is asked to order disclosure to a government attorney, see 463 U. S., at 443–444; *Illinois* v. *Abbott & Associates, Inc.*, 460 U. S. 557 (1983), we made it clear that the concerns that underlie the policy of grand jury secrecy are implicated to a much lesser extent when the disclosure merely involves Government attorneys.

> "Nothing in *Douglas Oil*, however, requires a district court to pretend that there are no differences between governmental bodies and private parties. The *Douglas Oil* standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others. Hence, although *Abbott* and the legislative history foreclose any special dispensation from the *Douglas Oil* standard for Government agencies, the standard itself accommodates any relevant considerations, peculiar to Government movants, that weigh for or against disclosure in a given case. For example, a district court might reasonably consider that disclosure

---

[8] In *Douglas Oil*, we described the standard as follows:
"Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed . . . ." 441 U. S., at 222.

to Justice Department attorneys poses less risk of further leakage or improper use than would disclosure to private parties or the general public. Similarly, we are informed that it is the usual policy of the Justice Department not to seek civil use of grand jury materials until the criminal aspect of the matter is closed. Cf. *Douglas Oil, supra,* at 222–223. And 'under the particularized-need standard, the district court may weigh the public interest, if any, served by disclosure to a governmental body . . . .' *Abbott, supra,* at 567–568, n. 15. On the other hand, for example, in weighing the need for disclosure, the court could take into account any alternative discovery tools available by statute or regulation to the agency seeking disclosure." 463 U. S., at 445.

In this case, the disclosures were requested to enable the Antitrust Division lawyers who had conducted the grand jury investigation to obtain the full benefit of the experience and expertise of the Civil Division lawyers who regularly handle litigation under the False Claims Act, and of the local United States Attorney who is regularly consulted before actions are filed in his or her district. The public purposes served by the disclosure—efficient, effective, and evenhanded enforcement of federal statutes—are certainly valid and were not questioned by the Court of Appeals. Particularly because the contemplated use of the material was to make a decision on whether to proceed with a civil action, the disclosure here could have had the effect of saving the Government, the potential defendants, and witnesses the pains of costly and time-consuming depositions and interrogatories which might have later turned out to be wasted if the Government decided not to file a civil action after all. To be sure, as we recognized in *Sells,* not every instance of "saving time and expense" justifies disclosure. *Id.,* at 431. The question that must be asked is whether the public benefits of the disclosure in this case outweigh the dangers created by the limited disclosure requested.

In *Sells* we recognized three types of dangers involved in disclosure of grand jury information to Government attorneys for use related to civil proceedings. First, we stated that disclosure not only increases the "number of persons to whom the information is available (thereby increasing the risk of inadvertent or illegal release to others), but also it renders considerably more concrete the threat to the willingness of witnesses to come forward and to testify fully and candidly." *Id.*, at 432 (footnote omitted). Neither of these fears is well founded with respect to the narrow disclosure involved in this case. The disclosure of a summary of a portion of the grand jury record to named attorneys for purposes of consultation does not pose the same risk of a wide breach of grand jury secrecy as would allowing unlimited use of the material to all attorneys in another division—the disclosure involved in *Sells*. Moreover, the fact that the grand jury had already terminated mitigates the damage of a possible inadvertent disclosure. See *id.*, at 445. Finally, because the disclosure authorized in this case would not directly result in any witness' testimony being used against him or her in a civil proceeding, there is little fear that the disclosure will have any effect on future grand jury testimony.

The second concern identified in *Sells* is the threat to the integrity of the grand jury itself. We explained that if "prosecutors in a given case knew that their colleagues would be free to use the materials generated by the grand jury for a civil case, they might be tempted to manipulate the grand jury's powerful investigative tools to root out additional evidence useful in the civil suit, or even to start or continue a grand jury inquiry where no criminal prosecution seemed likely." *Id.*, at 432. The discussion of this concern in *Sells* dealt with whether the Civil Division should be given unfettered access to grand jury materials. We think the concern is far less worrisome when the attorneys seeking disclosure must go before a court and demonstrate a particularized need prior to any disclosure, and when, as part of that inquiry, the

district court may properly consider whether the circumstances disclose any evidence of grand jury abuse. In this case, for example, one of the Government attorneys involved in the criminal investigation submitted an affidavit attesting to the Department's good faith in conducting the grand jury investigation, App. 17–19, and there has been no evidence or allegation to the contrary. The fact that a court is involved in this manner lessens some of the usual difficulty in detecting grand jury abuse. See *Sells*, 463 U. S., at 432. Moreover, we think the fear of abuse is minimal when the civil use contemplated is simply consultation with various Government lawyers about the prudence of proceeding with a civil action.

The final concern discussed in *Sells* is that "use of grand jury materials by Government agencies in civil or administrative settings threatens to subvert the limitations applied outside the grand jury context on the Government's powers of discovery and investigation." *Id.*, at 433. We continue to believe that this is an important concern, but it is not seriously implicated when the Government simply wishes to use the material for consultation. Of course, when the Government requests disclosure for use in an actual adversarial proceeding, this factor (as well as the others) may require a stronger showing of necessity. We have explained that "as the considerations justifying secrecy become less relevant, a party asserting a need for grand jury [material] will have a lesser burden in showing justification." *Douglas Oil*, 441 U. S., at 223.

Although it recognized that the disclosure in this case did not seriously threaten the values of grand jury secrecy, the Court of Appeals nonetheless concluded that the request for disclosure should have been denied because virtually all of the relevant information could have been obtained from respondents through discovery under the Antitrust Civil Proc-

ess Act.[9] The Court of Appeals believed that the delay and expense that would be caused by such duplicative discovery was not a relevant factor in the particularized need analysis. 774 F. 2d, at 39.

While the possibility of obtaining information from alternative sources is certainly an important factor, we believe that the Court of Appeals exaggerated its significance in this case. Even if we assume that all of the relevant material could have been obtained through the civil discovery tools available to the Government,[10] our precedents do not establish a *per se* rule against disclosure. Rather, we have repeatedly stressed that wide discretion must be afforded to district court judges in evaluating whether disclosure is appropriate. See *Douglas Oil*, 441 U. S., at 228; *id.*, at 236–237 (STEVENS, J., dissenting); *Pittsburgh Plate Glass Co.* v. *United States*, 360 U. S. 395, 399 (1959). The threat to grand jury secrecy was minimal in this context, and under the circumstances, the District Court properly considered the strong "public interests served" through disclosure. See *Sells*, 463 U. S., at 445; *id.*, at 469–470 (Burger, C. J., dissenting). As we noted in *Sells*, the governing standard is "a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situa-

---

[9] The Court of Appeals was also concerned about the specificity of the requested disclosure. While this concern was appropriate, the lack of particularity was not overly dangerous in this setting because the interest in preserving secrecy from Civil Division lawyers was minimal, and the Antitrust lawyers obviously would not have any reason to burden them with portions of the record that were not relevant to the advisory task that they were being asked to perform.

[10] It is far from clear that this assumption is accurate. Only in 1986 did Congress amend the False Claims Act so as to allow the use of CID's for investigations of violations of that Act. See Pub. L. 99–562, 100 Stat. 3153. In addition, the Government's opportunity to proceed with civil discovery before deciding whether to file a civil complaint was significantly hampered by the fact that the statute of limitations on one of the claims was to run shortly after the grand jury was dismissed.

tions than in others." *Id.*, at 445. The District Court correctly examined the relevant factors and we cannot say that it abused its discretion in determining that the equities leaned in favor of disclosure.[11]

The judgment of the Court of Appeals is

*Reversed.*

JUSTICE WHITE took no part in the consideration or decision of this case.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL and JUSTICE BLACKMUN join, dissenting.

Rule 6(e) greatly restricts the availability of grand jury evidence in order to preserve the secrecy and integrity of grand jury proceedings. Consistent with these concerns, in *United States* v. *Sells Engineering, Inc.*, 463 U. S. 418 (1983), this Court rejected the contention that grand jury information is automatically available to any Justice Department Civil Division attorney. Essential to that conclusion was the principle that automatic access to grand jury material is appropriate only for the limited purpose of permitting a prosecutor to assist the grand jury, and that a Government attorney seeking to use grand jury information for civil purposes lacks such a

---

[11] Based on his assumption that any complaint filed would necessarily disclose grand jury information, JUSTICE BRENNAN concludes that there could be no legitimate justification for disclosure to the Civil Division lawyers and the United States Attorney for consultation purposes. This argument misses two points. First, the Antitrust Division may have wanted the attorneys' advice on the matter even if they would not have been able to disclose the actual grand jury materials in a subsequent civil proceeding. See n. 6, *supra.* Second, in the event that the consultations confirmed the position that a civil suit was appropriate, the Antitrust Division attorneys may have planned on eventually seeking a second court order that would allow them to disclose the material in a civil suit. See *post*, at 127 (Government may, of course, seek court order permitting disclosure in civil case). The purpose of the consultation, therefore, was not necessarily intertwined with any disclosure that JUSTICE BRENNAN believes is prohibited.

justification. *Id.*, at 431. Given this holding, it is simply irrelevant whether the attorney who desires to use grand jury information in a civil action worked with the grand jury at an earlier time. The crucial fact is that the use to which that attorney would put this information is in no way in aid of the grand jury. Nonetheless, the Court today holds that an attorney's past connection with that body makes grand jury material automatically available to that attorney for the purpose of determining whether a civil complaint should be filed. The Court reaches this result only by adopting a severely restricted construction of the word "disclosure" in Rule 6(e). Because this construction ignores the substantive concerns of that Rule and is flatly inconsistent with the reasoning in *Sells*, I dissent.

I

The grand jury is an exception to our reliance on the adversarial process in our criminal justice system. As we have stated:

> "[The grand jury] is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime." *Blair* v. *United States*, 250 U. S. 273, 282 (1919).

By virtue of the grand jury's character as an inquisitorial body, "there are few if any other forums in which a governmental body has such relatively unregulated power to compel other persons to divulge information or produce evidence." *United States* v. *Sells Engineering, Inc., supra,* at 433.[1]

---

[1] See also *United States* v. *Calandra,* 414 U. S. 338, 343 (1974) ("The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials"); 2 S. Beale & W. Bryson, Grand Jury Law and

Persons may be summoned to testify even if no charge whatsoever is pending, *Wilson* v. *United States,* 221 U. S. 361 (1911), and even if they are only potential defendants, *United States* v. *Wong,* 431 U. S. 174, 179, n. 8 (1977). Except for privilege provisions, the Federal Rules of Evidence do not apply to proceedings before grand juries. Fed. Rule Evid. 1101(d)(2). The exclusionary rule is inapplicable in the grand jury context, *United States* v. *Calandra,* 414 U. S. 338 (1974), as is the usual requirement that one demonstrate the reasonableness of a subpoena to appear and provide voice or handwriting exemplars, *United States* v. *Dionisio,* 410 U. S. 1 (1973). Furthermore, a witness generally is not permitted to have counsel present in the grand jury room while testifying. 1 S. Beale & W. Bryson, Grand Jury Law and Practice § 6:16, p. 6–88 (1986).

These exceptional powers are wielded not on behalf of the prosecutor, but in aid of the grand jury as an "arm of the court." *Levine* v. *United States,* 362 U. S. 610, 617 (1960). They are employed to permit the grand jury to fulfill its "invaluable function in our society of standing between the accuser and the accused . . . to determine whether a charge is founded upon reason." *Wood* v. *Georgia,* 370 U. S. 375, 390 (1962). Thus, the information generated by the grand jury's inquiry is "not the property of the Government's attorneys, agents or investigators, nor are they entitled to possession of them in such a case. Instead, those documents are records of the court." *United States* v. *Procter & Gamble Co.,* 356 U. S. 677, 684–685 (1958) (Whittaker, J., concurring). See also *In re Grand Jury Investigation of Cuisinarts, Inc.,* 665 F. 2d 24, 31 (CA2 1981) ("[G]rand jury proceedings remain the records of the courts"), cert. denied *sub nom. Connecticut* v. *Cuisinarts, Inc.,* 460 U. S. 1068 (1983).

Recognition of the unique purpose for which grand jury powers are employed informed our decision in *Sells.* In that

Practice § 7:01, p. 7–4 (1986) ("[T]he grand jury has the most extensive subpoena power known to the law").

case, we rejected the Government's argument that the provision in Rule 6(e)(3)(A)(i) for disclosure of material to an attorney for the Government "for use in the performance of such attorney's duty" made grand jury information automatically available for use by Justice Department civil attorneys. Subsection (A)(i), we held, justified automatic access only for the limited purpose of enabling prosecutors to perform their role of assisting the grand jury. "An attorney with only civil duties," we stated, "lacks both the prosecutor's special role in supporting the grand jury, and the prosecutor's own crucial need to know what occurs before the grand jury." *Sells*, 463 U. S., at 431 (footnote omitted). As a result, "'[f]ederal prosecutors' are given a free hand concerning use of grand jury materials, at least pursuant to their 'duties relating to criminal law enforcement'; but disclosure of 'grand jury-developed evidence for civil law enforcement purposes' requires a (C)(i) court order." *Id.*, at 441–442 (quoting S. Rep. No. 95–354, p. 8 (1977)).

Such a rule, we held, was as applicable to attorneys within the Justice Department as to attorneys in agencies outside it. 463 U. S., at 442. The legislative history of subsection (A)(ii), permitting disclosure to the prosecutor's support staff, indicated, we said, that

> "Congress' expressions of concern about civil use of grand jury materials did not distinguish in principle between such use by outside agencies and by the Department; rather, *the key distinction was between disclosure for criminal use, as to which access should be automatic, and for civil use, as to which a court order should be required.*" *Id.*, at 440 (footnote omitted) (emphasis added).

The issue of automatic access by an attorney who earlier assisted the grand jury was not presented in *Sells*, and we did not reach it. *Id.*, at 431, n. 15. As the above language indicates, however, *Sells* makes clear that the automatic availability of grand jury information is determined not by

the identity of the attorney who seeks to use the material, but by the use to which the material would be put.[2]  Thus, it is irrelevant whether an attorney *once* worked with the grand jury—what matters is whether that attorney *now* does.

## II

The Court today evades this logic by finding that no "disclosure" under Rule 6(e) occurs when an attorney who assisted the grand jury uses grand jury material in determining whether a civil suit should be filed.  The premise of this conclusion is that Rule 6(e) prohibits only "those with information about the workings of the grand jury from revealing such information to *other persons* who are not authorized to have access to it under the Rule," *ante*, at 108 (emphasis added).[3]

---

[2] See also *United States* v. *Sells Engineering, Inc.*, 463 U. S., at 428 ("[I]t is immaterial that certain attorneys happen to be assigned to a unit called the Civil Division, or that their usual duties involve only civil cases. If, for example, the Attorney General (for whatever reason) were to detail a Civil Division attorney to conduct a criminal grand jury investigation, nothing in Rule 6 would prevent that attorney from doing so; he need not secure a transfer out of the Civil Division").

[3] The Court also rejects the position that, where an attorney who files a civil suit was permitted to use grand jury information to determine if that suit should be filed, a complaint relating to conduct that was the subject of the grand jury investigation necessarily discloses grand jury information. Instead, the Court notes that the complaint in this case did not specifically identify any information as the product of grand jury proceedings, nor have respondents identified "anything in the complaint that indirectly discloses grand jury information." *Ante*, at 110.  Determining somehow whether a complaint utilizes grand jury information is an inherently uncertain exercise, however, as is indicated by the Court's speculation about the possible scenarios under which the Government might not have relied on grand jury information in filing the civil complaint in this case.  *Ante*, at 110, n. 6. To base the determination whether there has been disclosure on such shifting sands is fundamentally inconsistent with the spirit of Rule 6(e)'s stringent and categorical prohibition on automatic access to grand jury material.  This is why it is preferable, as is set forth *infra*, to impose a bright-line prohibition on automatic access to grand jury material for *any* civil attorney.

The Court declares that it need not inquire whether its construction of Rule 6(e) is consistent with the Rule's purposes, since the Court derives that construction from its "reading of the Rule's plain language." *Ante,* at 109.

Before addressing the Court's "plain language" argument, it is important to make clear just how seriously the Court's interpretation of the Rule is at odds with the Rule's underlying purposes.

The first interest furthered by the secrecy imposed by Rule 6(e) is encouragement of witnesses to testify fully and candidly. *Sells, supra,* at 432; *Douglas Oil Co.* v. *Petrol Stops Northwest,* 441 U. S. 211, 219 (1979). The Court's construction of the term "disclosure" directly conflicts with this interest, for "[i]f a witness knows or fears that his testimony before the grand jury will be routinely available for use in governmental civil litigation or administrative action, he may well be less willing to speak for fear that he will get himself into trouble in some other forum." *Sells, supra,* at 432. The fact that the attorney utilizing this testimony received it directly from the grand jury, rather than from an attorney who worked with the grand jury, will hardly be relevant to a witness. It is the *substance* of the witness' testimony that will expose him or her to civil liability, not the identity of the Government attorney who employs it for this purpose. The Court's narrow construction of the term "disclosure" thus creates exactly the disincentive that Rule 6(e)'s restriction on disclosure is intended to prevent.[4]

---

[4] The Government is unpersuasive in arguing that this prospect is no more of a disincentive than the possibility that testimony will be revealed under the Jencks Act or under a Rule 6(e) court order. The Jencks Act authorizes the disclosure of grand jury statements only if the witness is called by the United States to testify at trial, only to the criminal defendant, and only to the extent that the statement relates to the subject matter of the witness' testimony at trial. 18 U. S. C. § 3500. Disclosure under a Rule 6(e) court order requires a judicial determination that the need for disclosure "outweighs the public interest in secrecy," *Douglas Oil Co.* v. *Petrol Stops Northwest,* 441 U. S. 211, 223 (1979). These provisions for

A second major interest served by Rule 6(e) is protection of the integrity of the grand jury. The automatic availability of grand jury material for civil use creates a temptation to utilize the grand jury's expansive investigative powers to generate evidence useful in civil litigation. In our society, the inquisitorial character of the grand jury is an anomaly that can be justified only if that body's powers are used in service of its unique historical function. Governmental appropriation of grand jury information for civil use thus diminishes public willingness to countenance the grand jury's far-reaching authority. Furthermore, circumvention of normal restrictions on the Government's civil discovery methods "would grant to the Government a virtual *ex parte* form of discovery, from which its civil litigation opponents are excluded unless they make a strong showing of particularized need." *Sells*, 463 U. S., at 434.

This concern about the use of grand jury information for civil purposes is reflected throughout the legislative history of the amendment adding subsection (3)(A)(ii) to Rule 6(e), which permits disclosure to nonattorneys for the purpose of assisting the prosecutor. We recounted this history in detail in *Sells, supra*, at 436–442, and there is no need to repeat it in detail here. The House of Representatives rejected the amendment as originally drafted because

> "[i]t was feared that the proposed change would allow Government agency personnel to obtain grand jury information which they could later use in connection with an unrelated civil or criminal case. This would enable those agencies to circumvent statutes that specifically circumscribe the investigative procedure otherwise available to them." H. R. Rep. No. 95–195, p. 4 (1977) (footnote omitted).

---

disclosure under limited circumstances hardly compare with the automatic, wholesale availability of grand jury information for the purpose of filing a civil complaint.

In response, the final version of the Rule sought

"to allay the concerns of those who fear that such prosecutorial power will lead to misuse of the grand jury to enforce non-criminal Federal laws by (1) providing a clear prohibition, subject to the penalty of contempt and (2) requiring that a court order under paragraph (C) be obtained to authorize such a disclosure." S. Rep. No. 95–354, p. 8 (1977).

The Court's construction of Rule 6(e) undercuts such objectives. The fact that there may be no expansion of the group of persons who possess grand jury information is simply irrelevant to a concern that the Government may seek to use the grand jury for civil purposes. If anything, there is even more motivation for such misuse when the prospective beneficiary in the civil context would be the prosecutor, as opposed to some other Government civil attorney. The Court's decision today creates an incentive for the Government to use prosecutors rather than civil attorneys to prepare and file civil complaints based on grand jury information, a practice directly at odds with Congress' intention to minimize the opportunity for using such information outside the grand jury context.[5] This temptation to employ the grand jury as a

---

[5] Contrary to the Court's assumption, there can be little doubt that grand jury information was used as the basis for the complaint in this case. The grand jury investigation produced some 250,000 pages of subpoenaed documents and transcripts of the testimony of "dozens of witnesses." *In re Grand Jury Investigation*, 774 F. 2d 34, 40 (CA2 1985). Two of the three respondents refused to certify in response to a Civil Investigative Demand (CID) by the Government that all documents requested by the CID had been submitted to the grand jury. These respondents furnished no documents in response to the CID's, nor did the Government attempt to enforce such demands. At least as to these two corporations, therefore, grand jury material is the *only* information that could have served as the basis for the civil complaint. The prominent role of grand jury material in preparing the complaint against respondents is underscored by the Antitrust Division's request for a Rule 6(e) order authorizing disclosure to the Civil Division and the United States Attorney's Office. As the Govern-

civil investigative unit is clearly inconsistent with the intention that Rule 6(e) operate to impede the use of grand jury information for civil purposes.[6]   It is far more consonant with that intention to find that matters occurring before the grand jury are "disclosed" any time they are put to use outside the grand jury context, whether or not the attorney who uses them assisted the grand jury at an earlier time.   There was "disclosure" in this case under that standard.

The Court avoids confronting the extent to which its decision undercuts the objectives of the Rule by maintaining that its construction of the Rule is compelled by the "plain meaning" of the word "disclosure."   It is surely unlikely, however, that a construction that produces results so clearly at variance with the concerns of the Rule is required by its "plain language."   Contrary to the Court's approach, the purposes of the Rule, not dictionary definitions, have guided courts in construing this term of art.   For instance, the Court's assumption that "disclosure" does not occur when a party seeking to utilize information is already in legitimate possession of it is belied by "the well settled rule that a witness is not entitled to a copy of his grand jury testimony on demand, even though he obviously was present in the grand jury room during the receipt of evidence, *since a rule of automatic access would expose grand jury witnesses to potential intimidation*" by making it possible for those with power over the witness to monitor his or her testimony.   Brief for

---

ment stated in that request, "The Antitrust Division currently is considering whether to bring a civil action, *based on the evidence obtained in the course of its grand jury investigation,* alleging violations of [the Sherman, False Claims, and Foreign Assistance Acts]."   App. 10 (emphasis added).

[6] It is true that any given grand jury investigation may be challenged on the ground that it is intended to generate information for a civil suit. *United States* v. *Procter & Gamble Co.*, 356 U. S. 677, 683–684 (1958). However, the need for a prophylactic rule against automatic disclosure rests on recognition of the fact that "if and when [grand jury misuse] does occur, it would often be very difficult to detect and prove." *Sells,* 463 U. S., at 432.

United States 26, n. 20 (emphasis added).[7]  See, *e. g.*, *United States* v. *Clavey*, 565 F. 2d 111, 113–114 (CA7 1978) (treating as "disclosure" access of grand jury witness to own prior testimony, noting "policy reasons justifying strict preservation of the secrecy" of grand jury proceedings); *Bast* v. *United States*, 542 F. 2d 893, 895–896 (CA4 1976) (treating as "disclosure" access of grand jury witness to own prior testimony, noting that "the secrecy of grand jury proceedings encourages witnesses to testify without fear of retaliation and protects the independence of the grand jury").  Cf. *Executive Securities Corp.* v. *Doe*, 702 F. 2d 406, 408–409 (CA2 1983) (treating as "disclosure" access to grand jury material by a party familiar with such material by virtue of earlier Rule 6(e) disclosure order).  Thus, although the Court's construction of the term "disclosure" would not encompass access to grand jury material by parties already familiar with such material, such access is routinely regarded as "disclosure" in certain instances because such a construction of the Rule furthers its basic purposes.

Furthermore, even relying on dictionary definitions, it is just as plausible to say that one "'make[s] known or public . . . something previously held close or secret,'" *ante*, at 108, n. 4 (quoting Webster's Third New International Dictionary 645 (1976)), when, as in this case, one takes information from a secret grand jury proceeding and puts it to use in the form of factual allegations recounted in a civil lawsuit.  See n. 5, *supra*.  By now, it should be apparent that the Court's interpretation of the term "disclosure" is not compelled by the Rule's plain language.  Given this fact, the appropriate course is to determine which interpretation is appropriate by reference to the underlying policy concerns of Rule 6(e).  As

---

[7] The prosecutor and the witness obviously differ in their respective bases for possession of grand jury information.  The prosecutor's access to it is authorized by Rule 6(e)(3)(A)(i); no such explicit authorization is necessary for the witness, of course, since he or she is the direct source of this information.

the preceding analysis demonstrates, the Court's construction is seriously deficient by that standard.

The Court's cramped reading of Rule 6(e) is particularly unjustified because the more plausible interpretation suggested above would not absolutely foreclose the Government from utilizing grand jury information outside the grand jury context. Rather, that interpretation would merely preclude *automatic* use of grand jury information, requiring a disinterested court in each case to weigh the need for grand jury secrecy against the need for civil use of the material. Even where judicial permission was not forthcoming, significant duplication of time and effort could be avoided by conducting the civil investigation *first*, and then referring cases for criminal prosecution. This is the procedure followed by the Securities and Exchange Commission, which conducts an initial civil investigation and then refers cases for prosecution to the Justice Department if warranted. 15 U. S. C. § 78u(h)(9)(B). Similarly, since this Court held in *United States* v. *Baggot*, 463 U. S. 476 (1983), that grand jury material could not be disclosed to the Internal Revenue Service (IRS) for use in a tax audit, the IRS conducts its own civil investigations, which may generate information useful in a subsequent criminal prosecution. In this case, the availability of expansive discovery powers under the Antitrust Civil Process Act, 15 U. S. C. §§ 1311–1314, would make it easy to avoid any purported duplication of effort.

Adoption of the interpretation urged by respondents therefore would impose no significant cost on the Government, and would be most consistent with the interests furthered by grand jury secrecy.

### III

I would also affirm the Court of Appeals insofar as it held that the Antitrust Division was not entitled to disclose grand jury material to the Civil Division and United States Attorney's Office, although for a different reason than that offered by the court below. The Antitrust Division sought this dis-

closure for the purpose of receiving advice whether filing a complaint on the basis of certain evidence would be consistent with Government enforcement policy. Most, if not all, of this evidence, however, was grand jury material, the use of which in a civil context had not been authorized by a court order. See n. 5, *supra*. Since this evidence could not legitimately serve as the basis for a civil complaint without a court order, there was no justification for its disclosure to third parties at that point. In effect, the Antitrust Division sought disclosure to obtain advice about the strength of evidence that the Division had not received authorization to use in filing its complaint. As a result, there was no "need" for disclosure justifying an exception to Rule 6(e)'s general rule of grand jury secrecy.

## IV

The Court today forsakes reliance on a disinterested judge to determine the propriety of the civil use of grand jury material in the circumstances of this case. The Court therefore leaves this decision entirely to the discretion of a party who stands to gain from utilizing the grand jury's enormous investigative powers for the purpose of preparing a civil complaint. This interpretation of Rule 6(e) is fundamentally at odds with that Rule's mandate that grand jury information be used for civil purposes only when, in particular circumstances, the need for the information outweighs the interest in grand jury secrecy. I dissent.