**In the Matter of the MAY 6, 1997, GRAND JURY.**

**No. CR. MISC. 98–442.**

United States District Court, M.D. Alabama, Northern Division.

Sept. 2, 1999.

Roy Kicklighter, for Roy Kicklighter.

R. Randolph Neeley, Redding Pitt, U.S. Attorney, Ann Ashton Holmes, U.S. Attorney's Office, Montgomery, AL, for U.S.

**ORDER**

MYRON H. THOMPSON, District Judge.

The court has before it the United States of America's *ex parte* motion for disclosure of grand jury proceedings, etc., filed May 14, 1998. By this motion, the government is seeking disclosure of certain documents and records obtained by the grand jury pursuant to its subpoena power. These materials relate to property owned by three individuals who are alleged to be involved in a gambling organization that has been, and is currently, under investigation. The government wants to obtain and use the materials in question so that it can consider a civil forfeiture action against the property. For the reasons that follow, the United States's motion is denied.

I.

 The federal grand jury, which is an institution of constitutional stature, serves a dual role in our criminal justice system—it determines when there is probable cause to believe a crime has been committed, and it protects citizens against unfounded criminal prosecutions. *See United States v. Sells Engineering, Inc.,* 463 U.S. 418, 423, 103 S.Ct. 3133, 3137, 77 L.Ed.2d 743 (1983). To carry out these duties, the grand jury has broad powers to compel the production of evidence before it, and wide latitude to structure the form and scope of its investigations. *Id.* at 423–424, 103 S.Ct. at 3137–38.[1] To further

---

1. To elaborate on the power of the grand jury, the *Sells Engineering* Court included the following description of the power:

" 'No judge presides to monitor [the grand jury's] proceedings. It deliberates in secret and may determine alone the course of its inquiry. The grand jury may compel the production of evidence or the testimony of witnesses as it considers appropriate, and its operation generally is unrestrained by the technical procedural and evidentiary rules governing the conduct of criminal trials. It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime.' "

463 U.S. at 423, 103 S.Ct. at 3137–38 (quoting *United States v. Calandra,* 414 U.S. 338, 343, 94 S.Ct. 613, 617, 38 L.Ed.2d 561 (1974)) (internal quotation marks and citation omitted).

enable it to carry out both of its duties effectively, the grand jury has a "long-established policy that maintains the secrecy of the grand jury proceedings." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 681, 78 S.Ct. 983, 986, 2 L.Ed.2d 1077 (1958). This secrecy is "as important for the protection of the innocent as for the pursuit of the guilty," *United States v. Johnson*, 319 U.S. 503, 513, 63 S.Ct. 1233, 1238, 87 L.Ed. 1546 (1943), and ensures, among other things, that those about to be indicted will not flee, that grand jurors will not be influenced in how they will vote, and that anyone who has been accused but exonerated will not be exposed to public scrutiny for an investigation that did not lead to indictment. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 218–19, 99 S.Ct. 1667, 1672–73, 60 L.Ed.2d 156 (1979).

■ Rule 6(e) of the Federal Rules of Criminal Procedure embodies the "long-established policy" of grand jury secrecy, setting forth both the basic rule and the limited exceptions to the rule.[2] As set forth in subparagraphs (A) and (B), Rule 6(e)(3) allows a relatively free flow of grand jury materials among government attorneys for use in enforcing federal criminal law. The free flow of materials does not apply, however, when government attorneys are seeking the materials for use in civil proceedings. Under these circum-stances, the attorneys must obtain a court order allowing the release of grand jury materials, and this process is governed by subparagraph (C)(i), which provides that, "Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made ... when so directed by a court preliminary to or in connection with a judicial proceeding." *See Sells Engineering*, 463 U.S. at 420, 103 S.Ct. at 3136. As the Supreme Court indicated in *Sells Engineering*, release under this provision "require[s] a strong showing of particularized need for grand jury materials before any disclosure will be permitted." *Id.* at 443, 103 S.Ct. at 3148. The Court then set out the standard it has used to evaluate such requests: " 'Parties seeking grand jury transcripts under Rule 6(e) must show that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.' " *Id.* (quoting *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674). Additionally, the court noted that " 'It is clear from *Procter & Gamble* and *Dennis[ v. United States*, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966),] that disclosure is appropriate only in those cases where the need for it outweighs the public interest in secrecy, and that the burden of demon-

---

2. In relevant part, Rule 6 provides:

"(e) Recording and Disclosure of Proceedings.

. . .

(2) General Rule of Secrecy. A grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

(3) Exceptions.

(A) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury, other than its deliberations and the vote of any grand juror, may be made to—

(i) an attorney for the government for use in the performance of such attorney's duty; and

(ii) such government personnel (including personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law.

. . .

(C) Disclosure otherwise prohibited by this rule of matters occurring before the grand jury may also be made—

(i) when so directed by a court preliminarily to or in connection with a judicial proceeding."

strating this balance rests upon the ... party seeking disclosure.'" *Id.* (quoting *Douglas Oil*, 441 U.S. at 223, 99 S.Ct. at 1675).

## II.

■ As the Supreme Court has stated, "[T]he court's duty in a case of this kind is to weigh carefully the competing interests in light of the relevant circumstances and the standards announced by this Court," *Douglas Oil*, 441 U.S. at 223, 99 S.Ct. at 1675, and "The *Douglas Oil* standard is a highly flexible one, adaptable to different circumstances and sensitive to the fact that the requirements of secrecy are greater in some situations than in others." *Sells Engineering*, 463 U.S. at 445, 103 S.Ct. at 3149. The flexibility and amorphous nature of the standard make it a challenge to apply, but after considering the circumstances presented in this case, the court finds that the United States has not met its burden to obtain the release of grand jury materials.

To reach its conclusion, the court moves through each of the factors identified as relevant by the Supreme Court and assesses whether it favors disclosure. The first factor the court considers is the need for maintaining secrecy presented in this case, and the court finds that this need remains high, thus counseling against disclosure. Although the grand jury at issue has completed its work and been discharged—a factor that normally decreases the need for secrecy, *see United States v. John Doe, Inc. I*, 481 U.S. 102, 114, 107 S.Ct. 1656, 1663, 95 L.Ed.2d 94 (1987) ("the fact that the grand jury had already terminated mitigates the damage of a possible inadvertent disclosure"), but does not eliminate it, *see Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674—in this particular case, as represented to the court by the Assistant United States Attorney (AUSA) during an *ex parte* hearing on this motion, no indictments were returned against the individuals about whom the government is now seeking information. Because no indictments were returned, the shield role of grand jury secrecy—ensuring that anyone who has been accused but exonerated will not be exposed to public scrutiny for an investigation that did not lead to indictment—figures prominently here. *See, e.g., United States v. Fischbach & Moore, Inc.*, 776 F.2d 839, 844 (9th Cir.1985) ("These defendants have been subjected to charges before the grand jury which have thus far proven unfounded, thereby increasing their interest in limiting disclosure of the grand jury proceedings."); *Lucas v. Turner*, 725 F.2d 1095, 1106 (7th Cir.1984) ("'A glaring injustice could be inflicted and irreparable injury caused to the reputation of a person if it were to become known that there is or ever was before the grand jury any proceeding concerning him even if he were not subsequently indicted.' ... Here, since the grand jury exonerated those defendants who were called before it, all the more reason exists to maintain the secrecy of the grand jury so that these defendants' reputation and privacy is not needlessly invaded.") (quoting *In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 33 (2d Cir.1981), *cert. denied*, 460 U.S. 1068, 103 S.Ct. 1520, 75 L.Ed.2d 945 (1983)). The court takes this role of grand jury secrecy very seriously, and believes it leads to a heightened need for maintaining secrecy.

■ Additionally, as further represented by the AUSA, the materials being sought, which were previously presented to the grand jury at issue, may be presented to a future grand jury to seek indictment again. This fact raises two of the other concerns addressed by grand jury secrecy—that those about to be indicted may flee, and that the new grand jurors may be susceptible to being influenced in how they will vote—and the release of information here may give life to these concerns. In evaluating the need for secrecy, the court "must consider not only the immediate effects upon a particular grand jury, but also the possible effect upon the functioning of a future grand jury." *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674. These additional concerns further support the court's conclusion that

the need for secrecy is heightened in this case.

The second factor the court considers is the requirement that the government make a "strong showing of particularized need." In *Procter & Gamble,* the Supreme Court indicated that "the use of a grand jury transcript at trial to impeach a witness, to refresh his recollection, [or] to test his credibility and the like," 356 U.S. at 683, 78 S.Ct. at 987, are the types of particularized needs that justify lifting grand jury secrecy. Courts have also recognized that general claims of need for materials are insufficient. *See, e.g., In the Matter of Grand Jury Proceedings, Sept., 1986,* 942 F.2d 1195, 1199 (7th Cir.1991) ("The secrecy of a grand jury proceeding is not to be pierced by such a slender reed: a mere possibility of benefit does not satisfy the required showing of particularized need."); *In re Lynde,* 922 F.2d 1448, 1454–55 (10th Cir.1991) (general claim that disclosure will lead to exculpatory evidence does not demonstrate 'particularized need'). The court has its doubts as to whether considering civil forfeiture proceedings is of the same moment as the particularized needs identified by the Supreme Court, and even whether such a need rises to a sufficient level to show particularized need. Although the court does not find the government's need to be particularly compelling, it will give the government the benefit of the doubt that it has made a sufficient showing to avoid being denied disclosure altogether, even if the showing does not compel disclosure either.

The third factor is whether the government will suffer an injustice in another proceeding without obtaining the materials at issue. The court does not credit the government's assertion that it will suffer an injustice by not having the information requested in that it will not be able to forfeit the property it suspects it has a right to forfeit. An injustice does not accrue to the government when it cannot come by information it needs, using the prescribed means for gathering such information, to bring civil forfeiture proceedings. There is no broad-sweeping right given to the government to collect whatever information it needs by whatever means to bring civil forfeiture proceedings. So the government does not suffer an injustice when it cannot get such information, but simply bumps up against the limits prescribed by Congress for carrying out such proceedings.

■ On a related point, the court must emphasize that evidence collected by the grand jury is not meant for general availability to the government as discovery material.[3] This information is collected pursuant to the broad and coercive powers of the grand jury for the sake of its investigations, and it is not meant to be passed along to the government for general use. Furthermore, Congress has prescribed procedures and limits on civil discovery that are supposed to control how parties behave during discovery and put all par-

3. In *Sells Engineering,* the Supreme Court wrote at length about the types of mischief that could be caused by allowing the government free access to grand jury materials:

"[B]ecause the Government takes an active part in the activities of the grand jury, disclosure to government attorneys for civil use poses a significant threat to the integrity of the grand jury itself. If prosecutors in a given case knew that their colleagues would be free to use the materials generated by the grand jury for a civil case, they might be tempted to manipulate the grand jury's powerful investigative tools to root out additional evidence useful in the civil suit, or even to start or continue a grand jury inquiry where no criminal prosecution seemed likely. Any such use of grand jury proceedings to elicit evidence for use in a civil case is improper *per se....* Our concern is based less on any belief that grand jury misuse is in fact widespread than on our concern that, if and when it does occur, it would often be very difficult to detect and prove. Moreover, as the legislative history discussed ... shows, our concern over possible misappropriation of the grand jury itself was shared by Congress when it enacted the present version of Rule 6(e). Such a potential for misuse should not be allowed absent a clear mandate in the law." 463 U.S. at 432–33, 103 S.Ct. at 3142 (citations omitted).

ties on a level playing field.[4] When the government has failed to succeed under those limits, grand jury material is not meant as a substitute. *See, e.g., Lucas v. Turner,* 725 F.2d 1095, 1106 (7th Cir.1984) ("Grand jury testimony is not a substitute for proper discovery and should not be used as a panacea for improper, inadequate and untimely discovery.").

The fourth and last factor the court considers is whether the government's request is "structured to cover only material so needed." Looking at what the government has requested—documents and records of gambling transactions, financial records and documents and account information, property records, telephone and other communications records and infor-

mation, tax records, accounting records, and records of cash purchases for three individuals—this appears to be a pretty broad request, and it also appears that it is not necessarily structured in any particular way other than to gain information about the persons at issue. During the *ex parte* hearing, the AUSA even stated "We have had a more extensive naming of potential evidence to ensure that we don't— that while we particularize, we don't limit ourselves necessarily." The AUSA was, however, unable to conclusively say anything about the material he was requesting—including how voluminous it is—because he has never seen it. His request, and the information he was able to offer to the court, was only general and vague.[5]

4. On the topic of limits on discovery, the *Sells Engineering* Court wrote:

"[U]se of grand jury materials by government agencies in civil or administrative settings threatens to subvert the limitations applied outside the grand jury context on the Government's powers of discovery and investigation. While there are some limits on the investigative powers of the grand jury, there are few if any other forums in which a governmental body has such relatively unregulated power to compel other persons to divulge information or produce evidence. Other agencies, both within and without the Justice Department, operate under specific and detailed statutes, rules, or regulations conferring only limited authority to require citizens to testify or produce evidence. Some agencies have been granted special statutory powers to obtain information and require testimony in pursuance of their duties. Others (including the Civil Division) are relegated to the usual course of discovery under the Federal Rules of Civil Procedure. In either case, the limitations imposed on investigation and discovery exist for sound reasons—ranging from fundamental fairness to concern about burdensomeness and intrusiveness. If government litigators or investigators in civil matters enjoyed unlimited access to grand jury material, though, there would be little reason for them to resort to their usual, more limited avenues of investigation. To allow these agencies to circumvent their usual methods of discovery would not only subvert the limitations and procedural requirements built into those methods, but would grant to the Government a virtual ex parte form of discovery, from which its civil litigation opponents are excluded unless they

make a strong showing of particularized need. In civil litigation as in criminal, "it is rarely justifiable for the [Government] to have exclusive access to a storehouse of relevant fact." *Dennis v. United States,* 384 U.S. 855, 873, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966) (footnote omitted). We are reluctant to conclude that the draftsmen of Rule 6 intended so remarkable a result." 463 U.S. at 433–34, 103 S.Ct. at 3142–43 (footnotes omitted).

5. The primary reason the AUSA's request and information were general and vague is that he is a civil attorney with the United States Attorney's Office. The usefulness, and perhaps propriety, of having a civil attorney submit this type of request to the court is questionable. An individual who is forbidden from looking at the material at issue without a court order is hardly in a position to assist the court in answering many of the important questions that must be asked. The court needs relatively specific information about the role this information had before the grand jury and the impact that its release may have, and this attorney simply cannot provide that information.

The submitting of this motion by a civil AUSA raises an additional concern for the court. During the *ex parte* hearing on this motion, the AUSA stated that FBI and IRS agents informed him that "there are materials that were obtained pursuant to grand jury subpoenas and for this grand jury that's referenced in the motion ... that would be of benefit to the United States' position in the filing of these civil forfeiture actions." If the FBI and IRS agents appeared as witnesses

This lack of knowledge and specificity about the materials requested must counsel against release.

Finally, as a means of lessening the burden it must bear to gain disclosure, the government makes the argument that "courts have adopted a much more liberal approach to granting disclosure" of documentary materials, and, in support of this argument, cites to *United States v. Stanford,* 589 F.2d 285 (7th Cir.1978), *cert. denied,* 440 U.S. 983, 99 S.Ct. 1794, 60 L.Ed.2d 244 (1979), *United States v. Interstate Dress Carriers,* 280 F.2d 52 (2d Cir. 1960), and *In re Grand Jury Investigation (Appeal of New Jersey State Commission of Investigation),* 630 F.2d 996 (3d Cir. 1980), *cert. denied,* 449 U.S. 1081, 101 S.Ct. 865, 66 L.Ed.2d 805 (1981). The court does not agree that these cases stand for this proposition at all. In both *Interstate Dress* and *New Jersey State Commission of Investigation,* the court was faced with the question of whether it should release original documents being held by the grand jury that were being sought by other independent agencies so that the agencies could copy and use the documents in separate investigations. *See Interstate Dress,* 280 F.2d at 53; *New Jersey State Commission of Investigation,* 630 F.2d at 1000. In both of these cases, the independent agencies were acting pursuant to independent authority to obtain the documents, and the grand jury simply was in possession of what the agencies needed. Both courts concluded that the reasons for which the agencies were seeking the documents had nothing to do with the grand jury investigation, and the fact that the documents were in the possession of the grand jury did not alone provide a sufficient basis for shielding them under the veil of grand jury secrecy. *See Interstate Dress,* 280 F.2d at 54; *New Jersey State Commission of Investigation,* 630 F.2d at 1001. The requests for documents had nothing to do with what the grand jury was investigating and did not inquire about the grand jury investigation, but rather were structured around different matters altogether.

In *Stanford,* the release of the documents was under a very narrow and peculiar set of circumstances. The grand jury there had collected documents it was using to investigate welfare fraud. The investigation was long-standing, and, to carry it out, the grand jury had sworn as its 'investigative agents' a number of experts and law enforcement officials to assist it in collecting and analyzing the information before it. At one stage of the investigation, some of the law enforcement agents interviewed a number of witnesses whom they confronted with documents collected by the grand jury. *See Stanford,* 589 F.2d at 289–90. These witnesses, who were later convicted of welfare fraud, objected to the disclosure the documents. They argued that the agents' disclosure of the documents to them (the witnesses who were later convicted) violated the secrecy requirements of Rule 6(e). *Id.* at 289. The appellate court held that simply because these documents were possessed by the grand jury did not forbid their disclosure. The court explained:

"The disclosures challenged here revealed nothing about the grand jury investigation, and the disclosures were made only to persons legitimately connected with the documents. The documents revealed to the defendants were not described by the agents during the interviews as grand jury documents. Each defendant was shown only his or

---

before the grand jury and presented all of the materials that the government is now seeking, there is no problem with the agents having told the AUSA about the existence of the material because witnesses are not bound to maintain grand jury secrecy. However, if the agents learned about the materials because they are persons described in Rule 6(e)(3)(A)(ii) ("government personnel (includ-

ing personnel of a state or subdivision of a state) as are deemed necessary by an attorney for the government to assist an attorney for the government in the performance of such attorney's duty to enforce federal criminal law"), then their release of information to any person not authorized to receive this information absent a court order could constitute conduct in contempt of this court.

her own employment file, his or her own welfare applications, and his or her own endorsement on the warrants. For these reasons, the disclosure falls outside of the scope of Rule 6(e)."

*Id.* at 291 (footnote omitted).

These cases do not stand for the proposition, as the government has suggested, that release of documents is treated more liberally than release of testimony or other materials. The key inquiry is whether a release of materials may jeopardize the secrecy of the grand jury's proceedings. When a request does not inquire after and cannot give away the nature of the investigation, it need not fall within the Rule 6 category of "matters occurring before the grand jury." But where, as here, the government is asking for a host of documents related to the specific activities of the three individuals the grand jury was investigating, this cannot help but give away the nature of the grand jury proceedings. As the *Stanford* court stated, "A general request for 'all documents collected or received in connection with the investigation of antitrust violations . . . ,' for example, would be in effect a disclosure of the grand jury proceedings; the documents are significant because they were before the grand jury." 589 F.2d at 291 n. 6. Documents, just like testimony, can give away the nature of grand jury proceedings.

One final thing that should be noted is that in *Interstate Dress,* the court mentions that documents in possession of the grand jury remain the property of the owner of the documents. *See Interstate Dress,* 280 F.2d at 54. And the owner has the right to object to those documents being released to anyone else unless they are seeking the release pursuant to a valid authority. *See id.* In both *Interstate Dress* and *New Jersey State Commission of Investigation,* the agencies seeking documents had independent authority for getting the documents they wanted, but were being held back because the documents were physically in the possession of the grand jury. Here, as represented by the AUSA, the reason the government has come to the court and sought release of these materials is precisely because it *does not* have independent authority to get what it needs. It is using the grand jury's power as a way around its lack of other authority. Furthermore, as also represented by the AUSA, it is not seeking the documents because the grand jury has the originals, and it is the only place the government can get the documents. Rather, the AUSA thought the government could get the documents elsewhere if it had the means.

## III.

Having considered and weighed all the factors set forth by the Supreme Court for consideration with respect to a request to release grand jury materials, the court finds that the United States has very little in support of its request here, and therefore, it has not made a sufficient showing to allow disclosure of grand jury material.

Accordingly, it is ORDERED that the United States of America's *ex parte* motion for disclosure of grand jury proceedings, etc., filed May 14, 1998, is denied.