**STATE OF NEW YORK, Plaintiff,**

v.

**CEDAR PARK CONCRETE CORP., et al., Defendants.**

**STATE OF NEW YORK, Plaintiff,**

v.

**CENTURY MAXIM CONSTRUCTION CORP., et al., Defendants.**

**Nos. 85 CIV 1887 (LBS), 86 CIV. 8128 (LBS).**

United States District Court,
S.D. New York.

July 24, 1990.

See also, 130 F.R.D. 16.

Robert Abrams, Atty. Gen., State of N.Y., New York City (Lloyd Constantine, Chief, Antitrust Bureau, Robert F. Roach, Robert Hubbard, George Sampson, Asst. Atty. Gen., of counsel), for plaintiff.

Shea & Gould, New York City (Michael S. Feldberg, Lynne M. Fischman, James M.

Murphy, of counsel), for defendant Century Maxim Const. Corp.

Morvillo Abramowitz & Grand P.C., New York City (Michael Silberberg, of counsel), for defendants Joseph Depaola, Walter Goldstein and Frank Phelan.

Gerald Lefcourt, New York City, for defendant Marine Pollution Service, Inc. d/b/a Certified Concrete Co.

Parcher, Arisohn & Hayes, P.C., New York City (Mark S. Arisohn, of counsel), for defendants North Berry Const. Corp. and Joseph Martinelli.

Wilentz, Goldman & Spitzer, Woodbridge, N.J. (Roger P. Kaplan, of counsel), for defendants Cedar Park Concrete Corp. and Cedar Park Constr. Corp.

Sylvor, Schneer, Gold & Morelli, New York City (Richard Gold, of counsel), for defendant Julius Nasso S & A, a Joint Venture.

Meister, Levanthal & Slade, New York City (Ronald Meister, of counsel), for defendant G & G Concrete Corp.

### OPINION

SAND, District Judge.

These cases arise out of an alleged bid rigging/market allocation scheme in the New York City market for reinforced-concrete superstructure construction work. The State of New York seeks to amend its complaint to include claims for damages under New York's antitrust statute on behalf of government entities which were apparently indirect purchasers of the concrete work.

### Background

In *Illinois Brick Co. v. Illinois*, 431 U.S. 720, 97 S.Ct. 2061, 52 L.Ed.2d 707 (1977), the United States Supreme Court held that "indirect purchasers," downstream buyers who allege that they absorbed at least part of the "cost" of an antitrust violation, could not recover from the alleged violator under § 4 of the Clayton Act, 15 U.S.C. § 15. The Court described its decision as one of "statutory construction," *id.* at 736, 97 S.Ct. at 2070, and found that:

the legislative purpose in creating a group of " 'private attorneys general' " to enforce the antitrust laws under § 4 ... is better served by holding direct purchasers to be injured to the full extent of the overcharge paid by them than by attempting to apportion the overcharge among all that may have absorbed a part of it.

*Id.* at 746, 97 S.Ct. at 2075 (citation omitted).

Plaintiff, the State of New York, commenced these actions on March 20, 1985 and October 22, 1986 respectively, against more than thirty named defendants, all alleged participants in a continuing collusive bid rigging and market allocation scheme directed at the New York City market for "major reinforced-concrete superstructure construction work." *Cedar Park* Amended Complaint, Preliminary Statement. Although plaintiff sought treble damages under section 4 of the Clayton Act, 15 U.S.C. § 15, and sections 340 and 342–b of the New York General Business Law (the "Donnelly Act") for injuries allegedly sustained by the State and its political subdivisions, the only state subdivision actually named by plaintiff in its initial complaint was the New York Convention Center Development Corporation, a subsidiary of the New York State Urban Development Corporation ("UDC"). Plaintiff also sought an injunction against further violations and the imposition of civil penalties under the Donnelly Act.

In 1987, various of the defendants moved to dismiss all or portions of the complaints. In *State of N.Y. v. Cedar Park Concrete Corp.*, 665 F.Supp. 238 (S.D.N.Y.1987), this Court held that:

In view of the need early in the litigation to identify State-affiliated purchasers, we believe the complaints should be dismissed insofar as they purport to state treble damages claims on behalf of unidentified state subdivisions. Accordingly, we hold that insofar as the complaints allege federal and state antitrust damages claims on behalf of State subdivisions other than the UDC, they are dis-

missed without prejudice to repleading within 60 days.

*Id.* at 242. Having dismissed plaintiff's claims to the extent they asserted damages claims on behalf of State entities other than the State itself and the UDC, we turned our attention to the implications of *Illinois Brick,* which we described as stating a "principle of federal antitrust law." *Id.* We found that the treble damages claims asserted by the State and the UDC could withstand the motions to dismiss because the complaints contained "the required allegations of direct injury to both the State of New York and the UDC." *Id.* Pursuant to our opinion, the State later notified the Court and all parties that it would not assert any additional damage claims. *See* Letters of September 15 and September 22, 1987 from Alice McInerney, Assistant Attorney General.[1]

In *California v. ARC America Corp.,* ——— U.S. ———, 109 S.Ct. 1661, 104 L.Ed.2d 86 (1989), the Supreme Court held in a unanimous opinion joined in by seven justices that claims by indirect purchasers under state antitrust provisions providing such purchasers with a cause of action for damages were not pre-empted by § 4 of the Clayton Act. The Court stressed that it had "made clear" in *Illinois Brick* that the issue in that case was "strictly a question of statutory interpretation" and observed that nothing in that case "suggest[ed] that it would be contrary to congressional purposes for States to allow indirect purchasers to recover under their own antitrust laws." *Id.* 109 S.Ct. at 1666.

On October 3, 1989, plaintiff moved for "[a]n order reconsidering the Court's earlier decision ... and granting plaintiff the right to pursue its indirect purchaser damage claims under state antitrust law against defendants." Notice of Motion dated October 2, 1989. Plaintiff described this Court's earlier decision as "holding that it was a settled principle of antitrust law that 'only one who directly purchases products from an alleged antitrust violator may sue for treble damages'" and "effectively

barr[ing] repleading state affiliated downstream purchasers" on the basis of *Illinois Brick.* Plaintiff's Memorandum in Support of Motion to Reconsider at 3. At oral argument, we denied plaintiff's motion without prejudice to the filing of a motion for leave to file an Amended Complaint. Transcript of Oral Argument dated November 16, 1989 at 29.

On December 19, 1989, plaintiff moved for an order granting it leave to file an amended complaint seeking damages on behalf of five government entities which were apparently indirect purchasers of major reinforced concrete superstructure work for eight construction projects. Plaintiff continued to argue that this Court had, "relying on *Illinois Brick,* effectively dismissed plaintiff's indirect damage claims, including claims based on state antitrust law." Plaintiff's Memorandum in Support of Motion to Amend Complaints at 2. At oral argument, we noted that we were having "difficulty recognizing [our earlier] opinion from the plaintiff's characterization of it." Transcript of Oral Argument dated January 18, 1990 at 5–6.

### Discussion

■ Fed.R.Civ.P. 15(a) provides that: A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served ... Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

At the same time, leave may be denied where there has been undue delay, the movant has acted in bad faith or with a dilatory motive, the opposing party would be unduly prejudiced, or the amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Similarly, where plaintiff has already had a sufficient opportunity to plead, leave may be denied. *Kaster v. Modifica-*

---

**1.** In *State of N.Y. v. Cedar Park Concrete Corp.,* 684 F.Supp. 1229 (S.D.N.Y.1988), we dismissed without prejudice portions of plaintiff's complaints seeking damages and penalties for claims arising after the applicable statute of limitations had run.

*tion Sys., Inc.,* 731 F.2d 1014, 1018 (2d Cir.1984) (citing *Denny v. Barber,* 576 F.2d 465, 471 (2d Cir.1978)). While a change in the governing law can justify granting leave to amend despite the passage of a significant amount of time, *Ellis v. Blum,* 643 F.2d 68, 85 (2d Cir.1981); *Boileau v. Bethlehem Steel Corp.,* 730 F.2d 929, 937–38 (3d Cir.), *cert. denied,* 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984), mere ignorance of the law cannot. *Goss v. Revlon Inc.,* 548 ·F.2d 405, 407 (2d Cir.1976).

■ In this case, plaintiff again seeks to assert damage claims on behalf of state subdivisions a full two years after this Court dismissed the damages claims asserted by plaintiff on behalf of all unidentified state subdivisions without prejudice to repleading within 60 days. Though plaintiff discusses *ARC America* at great length, it is not arguing that the law changed during this two year period, that the law was unsettled or uncertain, that it misunderstood the law, or even that it misconstrued this Court's earlier decision. Instead, plaintiff argues that this Court "effectively" barred it from asserting claims under the Donnelly Act on behalf of indirect purchasers.

In no sense can this Court's earlier decision be construed as plaintiff suggests. In *State of N.Y. v. Cedar Park Concrete Corp.,* we dismissed the claims asserted on behalf of unidentified state subdivisions because they were not identified. Under a separate section heading, we then considered the claims asserted by the State on behalf of itself and the UDC. In this section of the opinion, we first observed that *Illinois Brick* stated a "settled principle of *federal* antitrust law." 665 F.Supp. at 242 (emphasis added). We then found that the complaint asserted claims on behalf of the State and the UDC as direct purchasers and thus did not dismiss the claims. We

neither reached nor were asked to reach the question whether plaintiff could assert damage claims under the Donnelly Act on behalf of state subdivisions which were indirect purchasers.

The most plaintiff could argue is that it was not certain until *ARC America* that claims could be asserted on behalf of indirect purchasers under state antitrust statutes.[2] As plaintiff itself concedes, however, whether indirect purchasers could recover under state antitrust laws was not resolved by *Illinois Brick* and remained an open question until *ARC America. See* Transcript of Oral Argument dated November 16, 1990 at 10. At the time of our first decision, it had already been the subject of ongoing litigation, legislative activity, and academic discussion. In 1985, a New York State judge had written:

> Clearly, Congress has not preempted the field of antitrust law by passage of the Federal antitrust statutes ... A State remains free to regulate in the area of antitrust despite the existence of the Federal antitrust provisions, so long as the State statutes do not conflict with the Federal law. Several states have antitrust laws that provide a remedy for indirect purchasers *(see, e.g.,* Ala.Code § 6–5–60[a]; Cal.Business and Professions Code § 16750; Hawaii Rev.Stat. § 480–14[c]; Illinois Ann.Stat. ch. 38, § 60–7[2]; Miss.Code Ann. § 75–21–9; Wis.Stat.Ann. § 133.18[1] ), but the validity of these statutes remains a matter of debate *(compare State of California v. California & Hawaiian Sugar Co.,* 9th Cir., 588 F.2d 1270, 1273, *cert. denied* 441 U.S. 932, 99 S.Ct. 2052, 60 L.Ed.2d 660 with *Russo & Dubin v. Allied Maintenance Corp.,* 95 Misc.2d 344, 347, 407 N.Y.S.2d 617 *and Matter of Wiring Device Antitrust Litigation,* 498 F.Supp.

---

**2.** We note in passing that it is by no means even clear that the Donnelly Act by its own terms permits claims by indirect purchasers. Unlike all but one of the statutes at issue in *ARC America,* the Donnelly Act does not "expressly allow indirect purchasers to sue." 109 S.Ct. at 1663–64 n. 3. The only court to apparently consider the issue denied recovery to indirect purchasers under the Donnelly Act. *See Russo*

*& Dubin v. Allied Maintenance Corp.,* 95 Misc.2d 344, 407 N.Y.S.2d 617 (Sup.Ct.N.Y.Co.1978). The Court reached its decision not upon preemption grounds but rather by citing *Illinois Brick* and analogizing the Donnelly Act to the Clayton Act. *Id.* 407 .N.Y.S.2d at 620. We express no opinion as to this issue of New York antitrust law.

**498**

79; *see*, Note, State Indirect Purchaser Statutes: The Preemptive Power of Illinois Brick, 62 BUL Rev 1241; Note, Indirect Purchaser Suits Under State Laws: A Detour Around the *Illinois Brick* Wall, 34 Stan L Rev 203 [1981]; Cavanagh, The *Illinois Brick* Dilemma: Is There a Legislative Solution?, 48 Alb L Rev 273, 309–310 [1984]).

*Tip Top Farms, Inc. v. Dairylea Co-op, Inc.*, 114 A.D.2d 12, 497 N.Y.S.2d 99, 109 (2d Dep't 1985) (Lazer, J., concurring in part and dissenting in part). Thus, plaintiff must still explain why it chose not to raise the issue earlier.

At oral argument on the Reconsideration Motion, counsel for plaintiff appeared to concede that they only became aware of the issue after *ARC America* and that it was only then that they "looked extremely closely at the [Donnelly Act's] legislative history and ... the legislative intent." Transcript of Oral Argument dated November 16, 1990 at 10. This explanation suggests that plaintiff was simply unaware of the law and does not offer a legally sufficient excuse for the delay.

### Conclusion

For the reasons stated above, plaintiff's motion to amend its complaint is denied. The parties are to inform the Court by letter of the status of these cases by August 31, 1990.

SO ORDERED.